86 N.J. Super. 598 (1965)
207 A.2d 570
MADELINE SHAW, ET AL., PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF BYRAM, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1965.
Decided March 1, 1965.
*600 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Bernard F. Conway argued the cause for appellants.
Mr. Francis E. Bright argued the cause for respondents (Messrs. Dolan & Dolan, attorneys).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiffs appeal from that portion of a judgment of the trial court upholding the validity of an amendment to the "Waste Matter Disposal Ordinance of the Township of Byram" which, in effect, prohibits the depositing of any garbage or other refuse, originating from beyond or outside of the limits of the Township of Byram, in, on or upon any licensed dump in said township.
In March 1952 plaintiffs Robert Shaw and Madeline Shaw acquired a 25-acre tract of land in Byram Township. Shortly *601 thereafter the Township Committee of Byram Township adopted an ordinance regulating the dumping of garbage and other waste matter within township limits and providing for the licensing of dumping operations. The ordinance contained a provision that it was unlawful to deposit garbage or refuse originating from beyond and outside the township in and upon a licensed dump "without first securing permission from the governing body of the Township of Byram."
Pursuant to said ordinance Robert Shaw applied for a license to conduct dumping operations on the above-mentioned tract of land and, on October 15, 1952, was issued a ten-year permit to so operate.
Either tacitly or explicitly Shaw received permission to pick up garbage and refuse from several other municipalities and to deposit the same in and upon his licensed dump. Eventually, the greater part of Shaw's dumping operations involved "out of town" garbage and refuse.
In September 1958 the township board of health adopted a "Waste Matter Disposal Ordinance of the Township of Byram" regulating dumping operations in the township. Insofar as it concerns this litigation, said ordinance was similar to the 1952 ordinance adopted by the township committee. In September 1962 the township board of health amended the foregoing ordinance and eliminated the provision for the obtaining of permission to dump "out of town" garbage and refuse. The effect of the amendment was to make it unlawful to deposit any garbage or refuse originating from beyond or outside township limits, in, on or upon any licensed dumps in said township.
On October 15, 1962 the ten-year permit issued to Shaw expired by its terms. Thereafter when Shaw applied for another permit he was notified that he would not be permitted to dump in or upon his dump any garbage or refuse which originated from beyond and outside the township. The instant suit followed.
At the trial Shaw estimated that approximately 40 yards of garbage per week are collected within the township and deposited *602 in his dump, as compared with 450 yards per week which would be collected outside the township and deposited if permitted.
The trial court held that the aforesaid amendment constituted a valid reasonable health regulation and was not illegal, unconstitutional or void.
On this appeal plaintiffs contend that the amendment is (1) arbitrary and capricious, and discriminatory in classification; (2) a deprivation of the lawful use of private property without due process of law, and (3) incompatible with the spirit and content of the State Sanitary Code established under N.J.S.A. 26:1A-7 et seq.
We find no merit in any of these contentions.
Plaintiffs base their argument that the amendment is arbitrary, capricious and discriminatory on the proposition that garbage or refuse is the same whether it originates within or without the township. Therefore, say plaintiffs, to differentiate between garbage or refuse originating within the township, and garbage or refuse originating beyond and outside township limits is an abuse of defendant's legislative authority.
We do not agree. Garbage or refuse is unsightly, smelly, attracts flies and rodents, and is a potential fire hazard. It is a prime source of disease and contamination. It has been called a necessary evil because it is a by-product of civilized society. Ordinarily, some provision is made for its collection and disposal by the local government. However, problems of public health and welfare are involved, and no matter how carefully regulated, garbage dumps present some hazard to a community, the degree of hazard being directly related to the amount of garbage dumped. A local government may properly make suitable provisions for the disposal of its own garbage and refuse. At the same time it can prevent its area from becoming a dumping ground for other municipalities and thus aggravating the hazard inherent in this type of operation. Cf. Earruso v. Board of Health, E. Hanover Twp., 120 N.J.L. 463 (Sup. Ct. 1938); Township of Dover v. *603 Witt, 7 N.J. Super. 259 (App. Div. 1950); State v. Wittenberg, 50 N.J. Super. 74 (App. Div. 1957), affirmed 26 N.J. 576 (1958).
The issue was directly considered in Wiggins v. Town of Somers, 4 N.Y.2d 215, 173 N.Y.S.2d 579, 149 N.E.2d 869 (Ct. App. 1958), where it was held that a municipality, in the proper exercise of its police power, could prohibit the dumping within the municipality of garbage originating outside the municipality. In so holding, the court said:
"Garbage dumps are obnoxious in every sense of the word and a town is entitled to restrict such operations. But it is met also with the fact that disposition must be made of the garbage of its residents. The ordinance in question impresses us as a precise accommodation between these confilcting interests. Where the latter interest ceases, the former prevails. Appreciating the complexities of the situation  the inherent obnoxiousness of garbage dumps, the aggravation of the condition by increased dumping, the growth of the community, the need for disposal of community garbage, etc.  it is impossible to stamp this ordinance as arbitrary and capricious." (173 N.Y.S.2d, at p. 584, 149 N.E.2d, at p. 873)
Plaintiffs cite the cases of Lutz v. Armour, 395 Pa. 576, 151 A.2d 108 (Sup. Ct. 1959), Ex parte Lyons; 27 Cal. App.2d 182, 80 P.2d 745 (D. Ct. App. 1938), and the dissenting opinion in Wiggins, supra, in support of their argument. However, we are not impressed with the rationale of these cases or the dissent in Wiggins.
Plaintiffs next contend that the amendment deprives them of the lawful use of their property without due process, particularly since it interferes with an established business which had been conducted on the premises by plaintiffs for many years prior to the amendment.
This argument also lacks merit. Concededly, the amendment restricts the use which plaintiffs have been making of their property. However, that fact standing alone does not constitute a deprivation of property without due process. Indeed, the local board of health, with due regard to the public health and in the reasonable exercise of its authority, could *604 prohibit the dumping of any garbage or refuse on plaintiffs' premises. N.J.S.A. 26:3-31(h).
The concept of a nonconforming use does not apply to public health regulations. The amendment herein is presumptively valid and a proper exercise of the local board's authority. Anyone challenging its legality has the burden of showing that it is arbitrary, unreasonable, capricious or discriminatory. This, plaintiffs have not done.
Plaintiffs' final argument is that the amendment is incompatible with the spirit and intent of the State Sanitary Code established under N.J.S.A. 26:1A-7 et seq. Chapter VIII of the Code deals with "Refuse Disposal." The regulations therein declare open dumps to be nuisances, hazardous to human health, and provide for the disposal of garbage and other refuse by means of a sanitary landfill method of operation. In brief, plaintiffs argue that since the regulations under the State Code deal only with the method of operating a dumping area and not with the source of the refuse or its volume, it must be concluded that the danger to public health exists only in the subject matter regulated. Plaintiffs therefore conclude that since the amended ordinance herein goes beyond the method of operating the dumping area set forth in the State Code by attempting to regulate as to the source of the garbage or refuse, it is in conflict with the State Code.
This contention is fully answered by the enabling act under which the State Code was adopted which provides, N.J.S.A. 26:1A-9, that the act shall not be deemed "to limit the right of any local board of health to adopt such ordinances, rules and regulations, as, in its opinion, may be necessary * * * but such ordinances, rules and regulations shall not be in conflict with the laws of this State or the provisions of the State Sanitary Code, except, however, that such ordinances, rules and regulations may be more restrictive than the provisions of the State Sanitary Code." (Emphasis added)
In our opinion, the amendment in question, while more restrictive than the State Code, is not in conflict with it.
Affirmed.