140 N.J. Super. 279 (1976)
356 A.2d 51
TOWN OF KEARNY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
JERSEY CITY INCINERATOR AUTHORITY; HUDSON JERSEY SANITATION CO., A CORPORATION OF THE STATE OF NEW JERSEY; MUNICIPAL SANITARY LANDFILL AUTHORITY, A JOINT VENTURE DOING BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 10, 1976.
*281 Mr. Norman A. Doyle, Jr. for the plaintiff (Messrs. Doyle & Brady, attorneys).
Mr. Lewis M. Holland for defendant (Messrs. Chasan, Leyner, Holland & Tarrant, attorneys).
Mr. Edwin N. Gross for the Municipal Sanitary Landfill Authority (Messrs. Starr, Weinberg & Fradkin, attorneys).
KENTZ, J.S.C.
The Town of Kearny brings this action seeking to enjoin the dumping of solid wastes originating in Jersey City onto a landfill in Kearny. The landfill site whereon the wastes are deposited is operated by defendant Municipal Sanitary Landfill Authority (MSLA) under a lease from Kearny. The wastes are transported in trucks by defendant Hudson Jersey Sanitation Co. under a contract with defendant Jersey City Incinerator Authority (Authority) which formerly disposed of these wastes at its incinerator plant located in Jersey City. The Authority ceased operation in November 1974.
In support of its application for a permanent injunction plaintiff alleges that this dumping of Jersey City wastes onto the MSLA site (1) violates a Kearny ordinance, (2) violates a previous order of the Hackensack Meadowlands Development Commission (HMDC) and (3) in general constitutes *282 irreparable injury to Kearny because the additional solid wastes can have only one effect, viz., shorten the life span of the existing landfills in Kearny. Kearny also contends that cessation of operation of the Authority's incinerator plant without the approval of the Board of Public Utilities Commission (PUC) is invalid.
The Authority has moved for summary judgment. The other parties agree that the matter is ripe for summary judgment. R. 4:46-2. Hudson Jersey Sanitation Co. has defaulted.
Several of the issues may be disposed of in short order. The contention of Kearny that the contested dumping is in violation of an HMDC order is longer viable. Although there may have been some basis for this allegation at the time of the filing of the complaint, the HMDC has since clarified the issue and taken the position that "it did not object to the said use of the MSLA Site I-C Landfill * * *" This issue is moot. Kearny conceded this point at oral argument.
The question of whether the Authority is a "public utility" and therefore subject to the jurisdiction of the PUC is presently pending on appeal in the Appellate Division. The PUC has already ruled that the Authority is subject to its jurisdiction and the present appeal is from that determination. There is a petition also pending before the PUC for approval of the Authority's shutdown of the incinerator plant. This application was made at the direction of the Appellate Division without prejudice to the Authority's assertion of lack of administrative jurisdiction.
Accordingly, I will not entertain those same issues now pending before the Appellate Division. Review of an administrative agency's final decision or action is reposed in the Appellate Division. R. 2:2-3(a). It is appropriate that the extent of the PUC jurisdiction be passed upon by that body in the first instance. A court should not enmesh itself in fields that have been entrusted to the authority and regulation of an administrative body. First resort should be to *283 the administrative agency whenever there is a colorable claim that the agency has jurisdiction. Woodside Homes, Inc. v. Morristown, 26 N.J. 529, 540-41 (1958); Oliva v. Garfield, 1 N.J. 184 (1948); Junction Water Co. v. Riddle, 108 N.J. Eq. 523, 526-27 (Ch. 1931). See generally, United States v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); Great Northern R. Co. v. Merchant's Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922).
The Kearny ordinance which is allegedly being violated by the acts of the defendants provides, in pertinent part:
It shall be unlawful in the Town of Kearny for any person to throw, cast or place any waste matter * * * originating from beyond and outside the limits of the Town of Kearny without first securing permission from the Council of the Town of Kearny; provided, however, that the prohibitions of this Section shall not apply to prohibit the disposal of that amount of solid waste on a daily basis within the limits of the Town of Kearny as determined by a survey of the Hackensack Meadowlands Development Commission, which survey was mandated by the provisions of N.J.S.A. 12:17-10 [sic], and which survey indicated a daily disposal of two thousand four hundred and sixty-seven and sixty-four hundredths (2, 467.64) tons per day. [Ordinance 83-17]
It is the Authority's claim that this ordinance is repugnant to the declared legislative policy of regionalization of the solid waste disposal problem, as contained in the Solid Waste Management Act of 1970, N.J.S.A. 13:1E-1 et seq., as amended, the Solid Waste Utility Control Act of 1970, N.J.S.A. 48:13A-1 et seg., and in the Hackensack Meadowlands Reclamation and Development Act, N.J.S.A. 13:17-1 et seq. The first two cited acts deal with solid waste disposal on a statewide basis while the third act is confined to a specific geographical area known as the Hackensack Meadowlands District (District), N.J.S.A. 13:17-4, wherein lies the MSLA landfill site. It is Kearny's position that its ordinance does not do violence to the concept of solid waste disposal regionalization "as evidenced by the existing New Jersey statutes."
*284 The issue is whether Kearny can prohibit, restrict or regulate the amount of dumping of extra-municipal solid wastes in light of the above cited statutes. In other words, has the field of solid waste disposal been preempted by the State so as to preclude Kearny from enacting the ordinance in question. The question, as it relates to the Hackensack Meadowlands Reclamation and Development Act (HMRDA), appears to be posed for the first time.
The stated purpose of the HMRDA is:
It is hereby declared that there are approximately 21,000 acres of salt water swamps, meadows and marshes which are commonly known as meadowlands, in the lower Hackensack River basin ... that the orderly, comprehensive development of these areas, can no longer be deferred; * * * that these areas need special protection from air and water pollution and special arrangements for the provision of facilities for the disposal of solid waste * * * that it is the purpose of this act to meet the aforementioned objectives by providing for a commission transcending municipal boundaries * * * [N.J.S.A. 13:17-1; emphasis supplied]
The HMDC was created and given broad powers to effectuate the goals of the HMRDA, one of which was "[to] provide solid waste disposal facilities for the treatment and disposal of solid waste * * *" N.J.S.A. 13:17-6(w). The HMDC was required to conduct a survey within six months of the effective date of the act (January 13, 1969) "to determine the total amount of solid waste treated and disposed on a daily basis in the district as of the effective date of this act by persons in this State. N.J.S.A. 13:17-10(a); emphasis supplied. The HMDC is directed to guarantee that solid waste disposal facilities sufficient to treat and dispose of that amount of waste ascertained by its survey shall be available. N.J.S.A. 13:17-10(b). Furthermore, N.J.S.A. 13:17-10(e) provides:
The Commission, in its discretion, may provide solid waste disposal facilities sufficient to treat and dispose of more than the total amount of solid waste determined by its survey, and may make such facilities available to persons other than those treating and disposing *285 of solid waste in the district as of the effective date of this act. [Emphasis supplied]
Lastly, the HMDC is mandated to
* * * give due consideration to the necessity to provide in the district sanitary landfills and other facilities for the disposal of solid waste which may be utilized by municipalities within the district and municipalities throughout the state. N.J.S.A. 13:17-9(b); [emphasis supplied]
It is readily apparent from a reading of the foregoing section that "ample authority to regulate landfill operations is expressly granted to the Commission." Mun. San. Landfill Auth. v. Hackensack, etc., Comm, 120 N.J. Super. 118, 125 (App. Div. 1972). One of the primary purposes of HMDC is to make special arrangements for the disposal of solid wastes within the District. See N.J.S.A. 13:17-1. It has the express authority to provide adequate facilities for the disposal of solid wastes in amounts that exceed that which was being disposed of within the District as of the effective date of the act, as determined by its survey. Moreover, and most importantly for purposes of this controversy, the HMDC must consider the need for sanitary landfills within the District which may be utilized by municipalities throughout the State.
The Kearny ordinance apparently purports to limit the amount of extra-municipal solid waste that can be dumped on a daily basis in Kearny to the difference between that amount, as determined by HMDC (N.J.S.A. 13:17-10), being dumped on January 13, 1969 and that amount generated in and disposed in Kearny. Stated in simple mathematical terms, the ordinance directs: subtract the number of tons of waste originating and disposed in Kearny from the HMDC survey figure (2,467.64 tons) and the difference is the allowable amount of waste that can be disposed within the Kearny boundaries. Presumably, if the amount of waste generated in Kearny and disposed therein were to amount to 2,467.64 tons on any given day, *286 no dumping of extra-municipal waste would be allowed. Kearny contends that its ordinance does not offend the provisions of the HMRDA but furthers the purpose of the act. As stated in Kearny's brief:
It is difficult to see how the Town of Kearny's ordinance is offensive to the legislative concept of regionalization as evidenced by the Hackensack Meadowlands Act, when the ordinance is almost identical to the provisions of this Act.
The problem of disposing of solid wastes is of major importance in New Jersey. See, e.g., Waste Control Act, N.J.S.A. 13:1I-2; Solid Waste Management Act, N.J.S.A. 13:1E-2. The situation is "extremely serious" and has been described as reaching "crisis proportions." Hackensack Meadowlands, etc. v. Mun. San. Landfill Auth., 68 N.J. 451, 460 (1975); Southern Ocean Landfill, Inc. v. Ocean Tp. Mayor and Council, 64 N.J. 190, 193 (1974). Our Supreme Court has recently affirmed the power of the State to ban out-of-state dumping. Hackensack Meadowlands, etc. v. Mun. San. Landfill Auth., supra. The scarcity of land available as landfill sites and the rapidly diminishing life span of existing sites is a grave matter of statewide concern. The problem is outlined generally in Hackensack Meadowlands, supra at 460-465.
Undoubtedly, it was the legislative intent in enacting the HMRDA that the HMDC be empowered, in fact directed, to recognize, evaluate and meet the problem of solid waste disposal within the District. These statutes were enacted by a Legislature that was keenly aware of the crisis facing the State and, in particular, the Hackensack River basin. See N.J.S.A. 13:17-1. It determined that the best way to cope with the problem was on a large regional basis. It delineated the physical perimeters of the District in the statute. N.J.S.A. 13:17-4. The HMDC is described as a "commission transcending municipal boundaries." N.J.S.A. 13:17-1. The conclusion is irresistible that the Legislature intended that the regulation *287 of solid waste disposal within the District be totally vested in the HMDC. To hold otherwise, would lead to confusion and absurd results. Wagner v. Newark, 24 N.J. 467, 480 (1957). If the Kearny ordinance is valid then all municipalities constituent to the District could regulate the dumping of extra-municipal wastes with the result being that the legislative attempt at a unified, comprehensive, regional treatment of the solid waste problem would be thwarted. All of the sections of the HMRDA directing and empowering the HMDC to develop the means for disposal of solid wastes and making these facilities available for the benefit of "municipalities throughout the State" would be meaningless. Such a result is incompatible with the express provisions of the statute and the public policy of the state. The ordinance must give way to the statute. Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348 (1971); Wagner v. Newark, supra; 6 McQuillin, Municipal Corporations (3 ed. 1969), § 21.34.
A municipality is a creation of the state and derives all its authority and power not secured by our constitutions from the legislature. Toms River Pub Co. v. Manasquan, 127 N.J. Super. 176 (Ch. 1974); Wagner v. Newark, supra. A power once possessed by a municipality can be taken away by the Legislature. Compare Shaw v. Byram Tp., 86 N.J. Super. 598 (App. Div. 1968), with Ringlieb v. Parsippany-Troy Hills Tp., supra. In determining whether the Legislature intended to occupy a particular field to the exclusion of local regulations, the court will look to the overall purpose and scope of the legislative scheme. Paramus v. Martin Paint Stores, 121 N.J. Super. 595 (Law Div. 1972); 6 McQuillin, Municipal Corporations, supra. As pointed out previously, this court is of the opinion that it is the clear legislative intent that the HMDC have complete control over the solid waste disposal problem within the District. This is not to say that Kearny is stripped of its police power and prohibited from enacting ordinances pursuant thereto. All that is being said here is *288 that Kearny cannot regulate how much waste can be dumped within the District lying in Kearny nor from where the waste must originate. Such determinations lie within the exclusive jurisdiction of HMDC. In this case the HMDC has taken the position that it does not object to the dumping of Jersey City wastes onto the MSLA site. (Cascino affidavit, supra). Therefore, Kearny cannot prohibit it.
Since it has been determined that the Kearny ordinance is invalid by virtue of the provisions of the HMRDA, it is not necessary for this court to decide whether this ordinance is void by virtue of statewide preemption of the solid waste problem. See Solid Waste Management Act, supra; Solid Waste Utility Control Act, Southern Ocean Landfill, Inc. v. Ocean Tp. Mayor and Council, and Ringlieb v. Parsippany-Troy Hills Tp., all supra. See also, Pleasure Bay Apts. v. Long Branch, 66 N.J. 79, 87 (1974). I also need not decide whether the police power of Kearny hereinbefore referred to is coextensive with the "health or environmental protection ordinances" specified in N.J.S.A. 13:1E-17.