172 N.J. Super. 223 (1980)
411 A.2d 727
RICHARD KELLY ET AL., APPELLANTS,
v.
HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, RESPONDENT. RICHARD KELLY ET AL., APPELLANTS,
v.
HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, RESPONDENT. HACKENSACK MEADOWLANDS DEVELOPMENT COMMITTEE, APPELLANT,
v.
HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1980.
Decided February 11, 1980.
*225 Before Judges LORA, ANTELL and PRESSLER.
Alfred A. Porro, Jr., argued the cause for all appellants (Alfred A. Porro, Jr., attorney for Hackensack Meadowlands Municipal Committee; Chandless, Weller & Kramer, attorneys for appellants Richard Kelly, James Mihalik, Gennaro Anzevino, Jack Ferraro, Louis Montenegro and Township of South Hackensack, a municipal corporation of New Jersey; Ralph W. Chandless on the brief).
Steven R. Gray, Deputy Attorney General, argued the cause for respondent Hackensack Meadowlands Development Commission (John J. Degnan, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel).
PER CURIAM.
These consolidated appeals challenge the action of the Hackensack Meadowlands Development Commission (HMDC) in rezoning 460 acres of land located in the Hackensack Meadowlands District and lying within the municipal boundaries of Moonachie, South Hackensack and Carlstadt. The statutory history of the creation of the HMDC, an analysis of its purposes and powers, and a determination of the constitutionality of the underlying legislation are matters which were all extensively *226 addressed in Meadowlands Reg'l Develop. Agency v. State, 112 N.J. Super. 89 (Ch.Div. 1970), aff'd 63 N.J. 35 (1973) and need not here be reiterated. Suffice it to say that the Supreme Court has expressly recognized an approved the breadth and validity of the zoning control accorded HMDC by N.J.S.A. 13:17-6(i), which authorizes HMDC
To prepare, adopt and implement a master plan for the physical development of all lands, or a portion thereof, lying within the district; and to adopt and enforce codes and standards for the effectuation of such plan.
And see the implementing regulations, N.J.A.C. 19:4 4.1 et seq.
The original master plan for the development of the district was adopted by HMDC in November 1972. In January 1977 HMDC proposed its first comprehensive set of amendments thereto consisting of 47 proposed changes. These changes reflected a variety of pertinent factors which developed after adoption of the original plan, including substantial changes in the State's tidelands claims, HMDC's plans for a 2000 acre park and the submission of rezoning applications by owners. The 460 acres here in question are owned by Empire Development and Terminal Construction Company (Empire), which sought eight of the 47 zoning changes. Five of these changes were sought for tracts in Carlstadt covering some 420 acres. Two were sought in respect of some 36 acres in South Hackensack, and the final one was sought for some 2 acres in Moonachie. The import of the changes sought was the rezoning for residential and light industrial use of land formerly zoned for marshland preservation, park and recreation, and research development.
Shortly after the amendment process was undertaken by HMDC, South Hackensack applied to it for rezoning of the Empire tracts within its boundaries from marshland preservation to light industrial, its stated reason being its desire for the ratables which might be constructed thereon. In the meantime, HMDC, pursuant to published notice, conducted two public *227 hearings on the whole amendment package, and at its meeting of June 15, 1977 adopted all of the 47 proposals with the exception of the eight affecting Empire. Consideration of these was deferred both because of public reaction and Empire's request for an opportunity to further study the land and to prepare a development plan. The following January, and before any action had been taken by HMDC in respect of the Empire property, South Hackensack again renewed its application, requesting further that its 36 acres in that municipality not be rezoned for residential use. HMDC assured South Hackensack that its application would be considered as part of the record when a final decision was made. South Hackensack, however, without waiting for a final decision nevertheless appealed from the decision of HMDC to postpone consideration of its January 1978 request. That appeal was brought by five individuals, members of the governing body of South Hackensack, and the borough itself, under the caption Kelly et al. v. Hackensack Meadowlands Development Commission. That is the first of the appeals now before us.
In February 1978 Empire filed a rezoning request with HMDC in accordance with its submitted development plan. Following HMDC's independent review of the Empire proposals, a public hearing was convened in June 1978 to consider them. In July 1978 HMDC adopted the eight amendments here in question. Immediately thereafter they were disapproved by the Hackensack Meadowlands Municipal Committee (HMMC).
The HMMC, constituted by N.J.S.A. 13:17 7, is composed of the mayor or elected chief executive officer of each of the district's constituent municipalities. Pursuant to N.J.S.A. 13:17-8, it has the responsibility of reviewing all codes, standards, the master plan and amendments thereto, development and redevelopment plans and improvement plans of HMDC before they become final. N.J.S.A. 13:17 8(c) further provides that if the HMMC withholds its approval of any proposal submitted to it for review by HMDC, adoption of that proposal by *228 HMDC requires the affirmative vote of five-sevenths of HMDC's full membership.
Because of and in light of HMMC's rejection of the eight Empire rezoning proposals, HMDC reconsidered them in September 1978 and, by the requisite vote, adopted them. This final action was appealed by the same Kelly group constituting the appellants in the first appeal and by HMMC.[1]
We find no merit in any of these appeals. As the Supreme Court made clear in Meadowlands Reg'l Redevelop. Agency v. State, supra, 63 N.J. at 46, judicial review of HMDC master planning action is available, but only where there is a charge of arbitrariness or illegality. Although both are here asserted, we perceive no basis for concluding that either exists.
Appellants' position is largely predicated upon their view that in adopting master plan amendments, HMDC is performing a quasi-judicial function implicating the whole range of procedural prescriptions attendant thereto, such as a requirement of individual notice to interested persons, the right to examine and cross-examine witnesses and the obligation of the agency to act on the basis of findings of fact and conclusions of law supported by the record. In short, appellants draw an analogy to an exercise by a local board of adjustment of the variance power. This analogy is inapposite. We regard it as perfectly clear that in adopting or amending its master plan the HMDC is performing a purely legislative function, analogous if to anything at all, to a municipal governing body's power to zone and rezone. See, e.g., N.J.S.A. 13:17 11. Just as clearly, *229 exercise of the legislative power need not be attended by the gamut of procedural due process safeguards which govern quasi-judicial proceedings. Cf. e.g., Consolidation Coal Co. v. Kandle, 105 N.J. Super. at 104, 113 118 (App.Div. 1969), aff'd o.b. 54 N.J. 11 (1969). Were there any doubt of the nature of the power being exercised, we would regard it as resolved by the "arbitrary and illegal" review standard enunciated by the Supreme Court in Meadowlands Reg'l Redevelop. Agency, supra. This is precisely the standard generally applicable to review of the exercise of municipal zoning power, see, e.g., Bow & Arrow Manor v. West Orange, 63 N.J. 335, 345 (1973), and is a very different standard from that of the substantial evidence rule applicable to review of quasi-judicial actions. We are, moreover, satisfied that the public notices published by HMDC of its meetings and its holding of public hearings satisfied the procedural requirements prerequisite to legislative action.
Nor do we find any merit in appellants' various contentions that the substance of the amendments was arbitrary or irrational. As noted in Bow & Arrow Manor v. West Orange, supra,
It is fundamental that zoning is a municipal legislative function, beyond the purview of interference by the courts unless an ordinance is seen in whole or in application to any particular property to be clearly arbitrary, capricious or plainly contrary to fundamental principles of zoning or the statute.... It is not the function of the court to rewrite or annul a particular zoning scheme... merely because the court would have done it differently or because the preponderance of the weight of the expert testimony adduced at trial is at variance with the local legislative judgment. If the latter is at least debatable, it is to be sustained. [at 343]
We regard these principles as applicable in determining the validity of HMDC master plan action, and we are satisfied that the appellants have not borne their heavy burden of demonstrating the invalidity of the amendments here in question. At the *230 various public hearings rational reasons were presented for all of the 47 amendments and nothing presented by appellants overcomes that presumptive rationality.
The administrative actions of the Hackensack Meadowlands Development Commission here appealed from are sustained.
NOTES
[1] Although the brief of HMDC obliquely questions the standing of HMMC to appeal from an override of its veto, as it were, no direct challenge to standing is made. Consequently, we do not decide the issue. We do, however, note our grave reservations as to its standing in this context. Essex Cty. Welf. Bd. v. Inst. & Agencies Dep't, 75 N.J. 232 (1978), cert. den. 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978); Bergen Cty. v. Port of N.Y. Authority, 32 N.J. 303 (1960); Dover Tp. v. Dover Bd. of Adj., 158 N.J. Super. 401 (App.Div. 1978).