960 A.2d 747 (2008)
404 N.J. Super. 49
In the Matter of HARTZ/DAMASCUS BAKERY, INC.
DOCKET NO. A-5566-06T3.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2008.
Decided November 14, 2008.
*749 John M. Johnson argued the cause for appellant Town of Secaucus (Johnson & Johnson, attorneys; Mr. Johnson, of counsel and on the brief).
Dennis A. Maycher, Wallington, argued the cause for appellant, intervenor Secaucus Board of Education (Law Offices of Dennis A. Maycher, P.C., attorneys; Mr. Maycher, of counsel and on the brief).
Christine Piatek, Deputy Attorney General, argued the cause for respondent, New Jersey Meadowlands Commission (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Piatek, on the brief).
Anthony J. Laura, Newark, argued the cause for respondent, Damascus Bakery, Inc. (Patton Boggs LLP, attorneys; Mr. Laura, of counsel and on the brief).
Respondent, Hartz Mountain Industries, has not filed a brief.
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Appellant, the Town of Secaucus (Secaucus), appeals from the May 15, 2007 grant of a zoning certificate by respondent, the New Jersey Meadowlands Commission (Meadowlands Commission or Commission), allowing Damascus Bakery, Inc. (Damascus) to retrofit an existing building in an industrial zone in the Hackensack Meadowlands District (District) for use as a bakery.[1] In seeking a remand for a plenary hearing, appellant contends that in issuing the zoning certificate, the Meadowlands Commission failed to comply with the requirements of its enabling legislation and its own administrative rules, and deprived interested parties of procedural and substantive due process. We disagree with these contentions, and affirm.
*750 By way of background, under the Hackensack Meadowlands Reclamation and Development Act (Act), N.J.S.A. 13:17-1 to -84, the Legislature created the Meadowlands Commission as a subdivision of the State to coordinate the orderly, sensible and comprehensive development of approximately 21,000 acres of lands spanning parts of fourteen municipalities in Hudson and Bergen Counties, including part of Secaucus (Hudson County). N.J.S.A. 13:17-1. To this end, the Legislature vested the Meadowlands Commission, an agency to "transcend municipal boundaries," with broad powers to plan for the physical development of lands within its boundaries and to adopt and enforce codes and standards to effectuate planning and development. N.J.S.A. 13:17-6(i). See also N.J.S.A. 13:17-6(j), (k), (r) and (t).
Pursuant to authority granted under the Act, the Meadowlands Commission prepared and adopted a Master Plan embodied in the agency's official zoning map. The zoning map denotes some areas for development (e.g., highway commercial, light industrial A and B zones, low density residential) and other areas for limited development (e.g., environmental conservation and waterfront recreation). N.J.S.A. 13:17-6(i); N.J.S.A. 13:17-9; N.J.A.C. 19:4-3.4. The Act also directs that the Master Plan contain provisions and criteria for the location and use of buildings, structures, and facilities and land for solid waste disposal, and may include provisions for a host of other matters such as sewage, water supply, housing standards, transportation, distribution of population density, etc. N.J.S.A. 13:17-11(a). The Plan may also contain codes and standards covering land use, comprehensive zoning, subdivisions, building construction and design, and the control of water, air pollution and solid waste disposal. N.J.S.A. 13:17-11(b). As such, the Meadowlands Commission has adopted comprehensive land use planning, site plan and zoning requirements for regional development of the Meadowlands. See N.J.A.C. 19:4-1.1 et seq. (District zoning regulations); N.J.A.C. 19:6-1.1 (building code).
Under the Act, no building or structure may be constructed or altered in the District unless the Meadowlands Commission shall first issue a permit approving the plans and specifications for the proposed construction or alteration as being in conformity with the Master Plan. N.J.S.A. 13:17-12(a). Furthermore, before any such permit is issued, the Chief Engineer of the Meadowlands Commission must issue a certificate verifying that the proposed construction or alteration meets the engineering standards adopted by the Meadowlands Commission. However, when an applicant meets the requirements for a zoning certificate, the Meadowlands Commission is obligated to issue the approval. N.J.S.A. 13:17-14.1; N.J.A.C. 19:4-4.5(e).
Although each constituent municipality may enact zoning ordinances and any other codes or standards for lands within the boundaries of both the municipality and the District, "no municipality shall enact or enforce any code which is inconsistent with the code contained in the master plan insofar as such code applies to property within the district...." N.J.S.A. 13:17-11(b). Further, municipalities must notify the Meadowlands Commission of all municipal amendments to their master plan, official map, zoning or subdivision regulations, and the granting of variances and special exceptions. N.J.S.A. 13:17-16(a).
Damascus is in the business of continuous production of flatbread products for retail sale. In March 2007, Damascus applied to the Meadowlands Commission for a zoning certificate to use an existing office/warehouse building, owned by Hartz *751 Mountain Industries, Inc. and situated within Secaucus' town borders, as a wholesale bakery factory. The vacant building is located at the end of a strip of existing light industrial, warehouse and large commercial and business facilities in the District, in the Meadowlands Commission's Light Industrial A(LIA) zone. See N.J.A.C. 19:4-5.72 to -5.78. The LIA zone is "designed to accommodate on large lots a wide range of industrial, distribution, commercial and business uses that generate a minimum of detrimental environmental effects." N.J.A.C. 19:4-5.72.
Damascus' proposed operation directly borders a residential area, within fifty feet of some residences, and lies approximately two-hundred and fifty feet from Clarendon Elementary School, a Secaucus public elementary school. As noted, the factory will operate 24/7 and will ship flour to and from the site using Enterprise Avenue, the street on which Clarendon Elementary School is located. Flour will be stored inside two silos installed inside the factory, and the factory will produce ethanol emissions, a natural byproduct of baking fermented doughs.
To build its bakery, Damascus had to make site improvements as well as interior alterations to the existing warehouse. As such, Damascus applied for a zoning certificate with the Meadowlands Commission on March 28, 2007. Its application represented that the building would be used for "continuous production of flatbread products" using "mechanical mixers, processing line, gas fired oven and cooling conveyors". In addition, "air and water [would] be filtered before discharged." Construction entailed "two new flour silos and a dough recovery system." Moreover, "167 off-street truck spaces" and "15 off-street customer spaces" would be provided for the facility.
Pursuant to N.J.S.A. 13:17-14.1, on April 2, 2007, the Meadowlands Commission gave written notice of Damascus' proposal by certified mail to the Mayor and Council of Secaucus, the mayors and councils of the surrounding eight counties, and the Hudson-Essex-Passaic Soil Conservation District. The notice letter described the action under Commission review as "a proposed change in use from a warehouse/office facility to a light manufacturing facility for baked goods, with related site improvements including two product silos." Included with the notice letter was a copy of Damascus' full, unedited application. The notice letter explained that if the recipients of the letter "have any objections or any comments to the enclosed application" they should contact the Commission "within ten (10) days of receipt" of the letter.[2] Significantly, no objection was voiced by any of the involved municipalities during this time period.
After its preliminary review of the application, on April 12, 2007, the Meadowlands Commission requested additional information from Damascus about its proposed use, including supporting documentation of Damascus' adherence to Commission performance standards. Secaucus' Construction Official, Vincent Prieto, was copied on this correspondence. On April 25, 2007, Prieto contacted the Commission with "questions regarding the proposed Damascus bakery based on concerns from the resident in the house closest to the gate at the end of Enterprise Avenue," requesting, specifically, additional information about the proposed work hours, night noises and garbage. In response, the Commission requested this information from Damascus, *752 and, on May 2, 2007, Damascus sent a letter to the Commission specifically outlining the nature of the bakery's manufacturing operation with details on production, shipping and receiving, and odors. On May 4, 2007, the Commission sent "site plan and information detailing the hours of operation for the proposed Damascus Bakery" to Prieto. There appears to have been no further correspondence from Prieto.
Applying the pertinent regulations at N.J.A.C. 19:4-4.2 to -4.5, and determining the application met the applicable engineering standards, on May 15, 2007, the Meadowlands Commission issued a zoning certificate to Damascus for "the change in use of 53,750 square feet of warehouse space to a light manufacturing facility for baked goods and related site improvements...." The certificate indicated, however, that before starting construction, Damascus must apply to Secaucus for a building permit and further obtain all federal, state and local permits which may pertain to its proposed project.[3]
Two weeks later, on May 31, 2007, the Mayor of Secaucus wrote the Commission opposing issuance of the zoning certificate and requesting to meet with the agency's Executive Director and staff. The Mayor argued that the decision "did not take into account the neighborhood and how residents would be affected, or the Meadowlands Commission's own rules" because "a commercial bakery is a considerably different type of facility than a warehouse ... [constituting] a change of use under the Meadowlands Commission's rules," which affords the residents and elected officials of Secaucus opportunity to be heard on the issue. He cited potential traffic, odor and noise concerns that might arise from the project.
On June 21, 2007, the Executive Director responded that Damascus was "entitled by statute to receive approval for th[e] development," because the Meadowlands Commission made a "detailed review" of Damascus' application and found Damascus had "complied with all Meadowlands Commission regulations and requirements." The Director also agreed to meet with the Mayor to discuss the matter.
On appeal, Secaucus challenges the Commission's action on both procedural and substantive grounds: (1) the Commission's decision was arbitrary, erroneously found no need for a variance, failed to consider vital health and safety issues, and constituted unlawful ad hoc zoning; (2) the Commission lacked jurisdiction to hear the application or, alternatively, improperly delegated its quasi-judicial decision-making authority to staff; (3) the Commission failed to comply with statutory notice and consultation requirements; and (4) the notice and hearing provisions in the Commission's rules violate substantive due process under the New Jersey and United States Constitutions.[4] And finally, in reply to the Commission's contrary contention, Secaucus asserts it has standing to bring this action.
We disagree with all these contentions save the last. On that score, Meadowlands Commission actions are reviewable *753 as of right. Infinity Broadcasting Corp. v. N.J. Meadowlands Comm'n, 187 N.J. 212, 901 A.2d 312 (2006); see also R. 2:2-3(a)(2). As to standing, we find that Secaucus has a sufficient stake in the outcome of the matter and "real adverseness" to challenge approval of the zoning certificate. N.J. State Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 67, 411 A.2d 168 (1980); In re Grant of Charter School Application, 320 N.J.Super. 174, 232-34, 727 A.2d 15 (App. Div.1999); In re New Jersey Bd. of Public Utilities, 200 N.J.Super. 544, 556, 491 A.2d 1295 (App.Div.1985). Indeed, given its nature and location, Damascus' bread-making factory may impact Secaucus residents and school children. Vehicular traffic may increase with the addition of factory trucks traveling on Enterprise Avenue, a street currently utilized by Secaucus residents and schoolchildren. Additionally, the presence of flour silos inside the factory may pose a fire risk, since flour dust is highly combustible and, if ignited, is likely to cause an explosion that could injure individuals in the surrounding area. Reich v. Con Agra Flour Milling Co., 25 F.3d 653, 656 (8th Cir.1994). Moreover, there is a possibility that odors and noise produced naturally from factory operation may negatively affect the nearby population. Consequently, there is a substantial potential for real harm to appellants so as to allow this challenge to proceed.
Having said that, we are equally satisfied that the Meadowlands Commission acted within its "exclusive" jurisdiction in this area and in conformity with its enabling legislation and applicable regulations. Accordingly, its decision was neither arbitrary nor unreasonable, and its procedures accorded appellants all the process due.

I.
As a threshold matter, we note that the Meadowlands Commission has exclusive jurisdiction over development in the District and has exclusive approval authority for all development applications therein. N.J.S.A. 13:17-1. In this regard, the Commission "is vested with broad powers." Infinity Broadcasting Corp., supra, 187 N.J. at 216, 901 A.2d 312. In Town of Kearny v. Jersey City Incinerator Authority, 140 N.J.Super. 279, 287, 356 A.2d 51 (Ch.Div.1976), a case involving disputes between a municipality and the predecessor to the Meadowlands Commission over regulation of solid waste, the court noted that "it is the clear legislative intent that the [Commission] have complete control over the solid waste disposal problem within the District." The court further noted that local ordinances must give way to the [state] statute. Ibid.; see also Meadowlands Reg'l Redevelopment Agency v. State of N.J., et al., 63 N.J. 35, 304 A.2d 545 (1973) (affirming Chancery Division decision in all respects and separately ruling on Article IX tax sharing requirements of the Act); Meadowlands Reg'l Dev. Agency v. Hackensack Meadowlands Dev. Comm'n, 119 N.J.Super. 572, 293 A.2d 192 (App.Div.) (interim zoning regulations held constitutional), certif. denied, 62 N.J. 72, 299 A.2d 69 (1972); Kelly v. Hackensack Meadowlands Develop. Comm'n, 172 N.J.Super. 223, 411 A.2d 727 (App.Div.) (Meadowlands Commission amendments to the Master Plan held valid), certif. denied, 85 N.J. 104, 425 A.2d 267 (1980). Indeed, in the absence of clear language to the contrary, "legislatively created agencies, authorized by the superior governmental authority of the State, may not be subjected to rules and regulations of local governing boards and agencies." N.J. Turnpike Auth. v. Sisselman, 106 N.J.Super. 358, 366, 255 A.2d 810 (App.Div.1969).
Here, the Damascus facility is situated in Secaucus but within the boundaries *754 of the District. As such, the Meadowlands Commission clearly had jurisdiction and was obliged to act on Damascus' application for a zoning certificate, having made the determination that Damascus met all the requirements for approval. N.J.S.A. 13:17-14.1.

II.
Appellants also challenge the notice and consultation in this case as deficient and claim due process requires opportunity to be heard at a plenary hearing on the application. We disagree.

(A)
As to the type of notice to local municipalities when the Commission receives a development application, the Act provides, in pertinent part:
Whenever the Meadowlands Commission receives an application for the development, improvement or redevelopment of, or for the construction or reconstruction of buildings or structures on, land in the district, the Meadowlands Commission shall notify within seven days, in writing by certified mail, the governing body of the municipality or municipalities in which the land is located and any municipality immediately adjacent thereto.
[N.J.S.A. 13:17-14.1.]
Although the Act does not specify the contents of the notice, we use a "common sense" standard, Perlmart v. Lacey Twp. Planning Bd., 295 N.J.Super. 234, 684 A.2d 1005 (App.Div.1996), in light of the purpose of notice to fairly apprise the ordinary layman so that an informed determination to participate may be made. See Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 74-75, 711 A.2d 282 (1998).
Here, the nature of Damascus' application had been properly described, and there was full disclosure. As noted, on April 2, 2007 (within seven business days of the March 28 filing), the Commission provided written notice, together with a copy of the application, by certified mail, to the Mayor and Council of Secaucus. Together, these documents clearly described the proposed use as a "continuous production bakery" and listed several proposed improvements associated with the operation, including air and water filtering, installation of outdoor storage silos, interior wall construction, loading docks and a retail component. Furthermore, follow-up communications between the Commission and Secaucus' Construction Official provided even more information. On April 12, 2007, Prieto received a copy of a detailed findings letter from the Commission to Damascus' architect, and on May 3, 2007, a second findings letter, explaining the planned installation of a "state of the art Megtec Catalytic Oxidizer to comply with all State and Federal air emission guidelines ... [that is] capable of destroying 98% of all VOC emissions, reducing ethanol emissions[,] which are a natural byproduct of baking fermented doughs[,] into harmless carbon dioxide." Prieto was also provided a copy of the Damascus site plan which clearly showed, among other fire suppression and ventilation systems, "a three-hour explosion proof wall" to be installed around the interior flour silos. Especially given Prieto's heightened understanding of zoning and construction matters, we are satisfied that appellant Secaucus was fully informed about Damascus' operation before approval of the zoning certificate and consequently the notice sufficed under N.J.S.A. 13:17-14.1.[5]

*755 (B)
In addition to notice, the Act requires the Commission to consult "with the notified governing body or bodies of the municipality or municipalities in which the land is located" before approving a zoning certificate application. N.J.S.A. 13:17-14.1. However, as with notice, no consultation method is specified. In the absence of explicit legislative direction, case law is instructive. In Rutgers v. Piluso, 60 N.J. 142, 153-54, 286 A.2d 697 (1972), the Court stated that the State agency is required "to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." See also Twp. of Franklin v. David den Hollander, et al., 172 N.J. 147, 150-52, 796 A.2d 874 (2002) (county agriculture boards and the State Agriculture Development Committee must give appropriate consideration to local ordinances and regulations that may affect agricultural practices).
Here, Secaucus was afforded ample opportunity to consult on the Damascus proposal but ostensibly declined the invitation. In fact, upon receipt of timely notice of the application, appellant was asked to comment but voiced no objection within the ten-day period provided. This, despite the fact that there was communication back and forth between Secaucus' Construction Official and the Commission on the specifics of the proposal. Consequently, the Commission proceeded with the Damascus application, investigating the developer's adherence to Commission engineering standards and identifying potential impacts on the public.
While this level of discourse suffices, in our view, to meet the Act's "consultation" provision, see N.J.S.A. 13:17-14.1, appellant nonetheless argues more was required by way of a plenary hearing on Damascus' application. We disagree. Plenary hearings are not required under the Act and implementing regulations for zoning certificate applications. Rather, plenary hearings are required only for special exceptions, variances, redevelopment projects and petitions for rezoning, N.J.A.C. 19:4-4.13; -4.14; -4.16(b)4; N.J.A.C. 19:3-5.4, and rule proposals. N.J.A.C. 19:3-1.5(b).
Contrary to appellants' argument, Damascus' application did not require a variance in order to approve the zoning certificate. N.J.A.C. 19:4-4.13, -14; N.J.A.C. 19:4-4.16(b)4. A use variance is one that "permits deviation from zoning requirements about use." Garner, Bryan A., Black's Law Dictionary, 7th Ed. (1999); see also N.J.S.A. 40:55D-7. Zoning requirements in the District, as noted, are governed by the Commission's Master Plan and the Act. A change in a building's use from a permitted use to another permitted use does not require a variance and, instead, is governed by the "change in use" provisions of N.J.A.C. 19:4-4.4(d)3.
Here, the LIA zone where the factory would operate permits, among twenty-three uses, light industry, institutional uses, warehouse and distribution facilities (which may include accessory retail sales of products stored therein) and wholesale *756 establishments. N.J.A.C. 19:4-5.73. Damascus' proposed change in use of the existing building from warehouse/office to a bakery is one of "light industry" and, thus, a permitted use in the zone. Accordingly, Damascus was required only to meet the "change in use" provisions of N.J.A.C. 19:4-4.4(d)3.
Appellants' insistence on a variance is premised on the erroneous assumption either that the building's pre-existing non-conformities as to open space and parking had previously been the subject of variances or that Damascus' proposed use expands these deficiencies. Nothing in the record, however, suggests that variances were ever necessary or previously obtained. Nor does the proposal contemplate any expansion of these pre-existing non-conformities. The placement of the silos indoors maintains the pre-existing open space at 11.2% (whereas a 15% minimum is required), and, therefore, no change is contemplated. As for parking, Damascus' proposal appears to actually decrease the intensity from the 180 spaces associated with the existing building use to the 167 required under the proposed use. Therefore, because these pre-existing nonconformities continue without expansion or increase in intensity, N.J.A.C. 19:4-6.1(b), there was no need for Damascus to apply for a variance to cure the existing open space and parking conditions. There being no need for a variance, a plenary hearing was not required.

III.
Nor did the Commission, as appellants contend, improperly delegate decision-making authority to staff. Delegation to the Chief Engineer to review and issue the zoning certificate in this instance was proper under the enabling Act and Commission regulations.
The Act distinguishes between, on the one hand, the Commission, which encompasses staff of the agency, and, on the other, the "Board of Meadowlands Commissioners," which is the seven-member board as defined in the N.J.S.A 13:17-5. See N.J.A.C. 19:4-2.1(a)11 and 12. In situations that require the Meadowlands Commissioners to formally vote to approve an application, Commission regulations expressly so provide. See, e.g., N.J.A.C. 19:4-4.14(f) through (n) governing variances. Thus, applications containing variances require formal vote of the Meadowlands Commission Board. See N.J.A.C. 19:4-4.14(d) and (l); -4.16; In re Amico/Tunnel Carwash, 371 N.J.Super. 199, 213, 852 A.2d 277 (App.Div.2004) (granting of a variance is a quasi-judicial function requiring the Board of Meadowlands Commissioners to vote to approve it).
Commission regulations allow for delegation of duties in those situations not falling under special exceptions, like variances. Thus, N.J.S.A. 13:17-5(h) states:
the powers of the Meadowlands Commission shall be vested in the members thereof in office from time to time ...; provided that the Meadowlands Commission may designate one or more of its agents or employees to exercise such administrative functions, powers and duties as it may deem proper, under its supervision and control....
[Id.]
Pursuant to this statutory authority, the Commission's Chief Engineer is authorized to issue zoning certificates for the Commission. N.J.S.A. 13:17-5(h), -12(a); N.J.A.C. 19:4-4.5(e). Indeed, the Chief Engineer has the professional expertise to determine technical and substantive compliance with the zoning regulations and performance standards and to determine whether a proposed use is permitted within a specific zone in the District.
*757 To be sure, courts have generally held that zoning certificate approval of development applications requiring variances is quasi-judicial in nature:
The determination whether to grant a variance is not simply a ministerial act but rather a quasi-judicial determination that requires an agency empowered to grant such relief to evaluate the factual materials presented in support of the application in light of controlling legal standards. A variance application arises in a highly elaborate, quasi-judicial procedural framework that is not typical of ordinary administrative licensure, and the decision-making process must be sensitive and informed.
[In re Amico/Tunnel Carwash, supra, 371 N.J.Super. at 213, 852 A.2d 277 (internal citations omitted).]
In contrast, the function of staff review of a zoning certificate application not requiring a variance, as here, is more administrative and ministerial than "quasi-judicial" in nature; more investigatory than adversarial. See Cedar Grove v. Sheridan, 209 N.J.Super. 267, 278, 507 A.2d 304 (App.Div.1986). As in the present case, it involves a straightforward analysis of whether the submission meets the administrative, technical and performance requirements of N.J.A.C. 19:4-4.3, -4.4, and -4.5, governing zoning certificates. This review is inherently different than that of a variance application, which seeks approval of structures or conditions that are not authorized by the zoning regulations and which, therefore, may have adverse impact upon adjacent properties as well as the intent and purpose of the zoning regulations. A variance application calls for the exercise of official discretion. Bressman v. Gash, 131 N.J. 517, 527, 529-30, 621 A.2d 476 (1993).
Here, Commission staff conducted an in-depth review of the Damascus proposal for compliance with detailed restrictions and requirements for proposed uses in the LIA zone. N.J.A.C. 19:4-5.73 -5.78; N.J.A.C. 19:4-7.1, -7.10.[6] Also requested of the applicant was additional information and certain modifications to ensure zoning and performance standards were fulfilled. In response, Damascus made numerous changes to its original plans, all geared to lessening any potential adverse impacts on the adjoining residential neighborhood. When the application was determined to be administratively complete, the Commission staff then conducted its administrative and technical review. Once having determined that Damascus complied with the Commission's LIA zoning regulations, staff had no discretion but to issue a zoning certificate pursuant to N.J.A.C. 19:4-4.5(e).

IV.
Finally, we are persuaded that the Commission properly considered pertinent public policy, health and safety issues, and that its ultimate determination was neither arbitrary nor unreasonable.
It is by now axiomatic that final determinations of administrative agencies will not be upset absent a showing that the decision was arbitrary, capricious or unreasonable, or that it violated legislative policies expressed or implied in the act that governs the agency. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963). A party who challenges them bears the burden of making such a showing. Furthermore, courts have a *758 "strong inclination to defer to agency action provided it is consistent with the legislative grant of power." Lewis ex rel. Lewis v. Catastrophic Illness In Children Relief Fund, 336 N.J.Super. 361, 369-70, 764 A.2d 1035 (App.Div.2001).
When an administrative agency interprets and applies a statute it is charged with administering in a manner that is reasonable, not arbitrary or capricious, and not contrary to the evident purpose of the statute, that interpretation should be upheld, irrespective of how the forum court would interpret the same statute in the absence of regulatory history.
[Blecker v. State, 323 N.J.Super. 434, 442, 733 A.2d 540 (App.Div.1999).]
Here, the Commission's decision was consistent with the legislative purpose and grant of power. Prior to issuing the zoning certificate, the Commission ensured that Damascus complied with pertinent regulatory requirements, including federal, state and local health and safety standards. For example, the Commission requested and Damascus agreed to place its flour silos inside the building to eliminate any adverse impact upon the public. Damascus also agreed to install a state of the art air control device, approved by the Department of Environmental Protection, to address any potential detrimental emissions that may occur from its operations. Damascus also sought approval from the Secaucus Municipal Utilities Authority for its wastewater discharge, providing information about water usage and wastewater discharge, as required. Furthermore, at the time of appeal, Damascus was in the process of producing a fire protection plan (installation of a fire lane) for submission to the municipality, and its site plan proposes installation of an explosion-proof wall around the interior flour silos.
In sum, we are persuaded that the Commission exercised its exclusive jurisdiction in this matter fairly  affording Secaucus adequate notice and opportunity to consult  and in conformance with its enabling Act and implementing regulations. Its grant of a zoning certificate considered all relevant factors, was based on applicable zoning regulations, and was neither arbitrary, unreasonable nor capricious.
Affirmed.
NOTES
[1] We granted the Secaucus Board of Education intervenor status on November 1, 2007.
[2] The Commission is obligated to act on an application in a timely manner. Within ten working days after receipt of an application deemed administratively complete, the Commission must determine technical completeness. N.J.A.C. 19:4-4.5(a).
[3] Following issuance of a zoning certificate, the Commission reviews the plans and specifications for the proposed alteration for conformity with the Master Plan, N.J.S.A. 13:17-12(a), and for construction code compliance. N.J.A.C. 19:6-1.6(c). Upon approval, the Commission issues a Plan Release, which allows the municipal construction official to issue building permits. N.J.A.C. 19:6-1-6(d). Upon completion of construction and a final commission inspection, a certificate of occupancy may be issued by the municipality.
[4] Intervenor Secaucus Board of Education raises similar arguments.
[5] As to intervenor Board of Education, under Commission regulations, individual property owners within the area of a proposed development need only be given notice in connection with special exceptions, variances, subdivisions, rezoning and redevelopment projects. N.J.A.C. 19:4-4.16; N.J.A.C. 19:3-5.5. Furthermore, by analogy, under the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -22, those beyond 200 feet from a property to be developed are afforded no right to automatic notice. N.J.S.A. 40:55D-12. Here, Clarendon Elementary, within the Board's jurisdiction, lies between 250-280 feet from the boundary line of the Damascus property.
[6] For instance, lots must be a certain size, N.J.A.C. 19:4-5.76, of a certain bulk, N.J.A.C. 19:4-5.77, and meet Category B performance standards for noise, vibrations, airborne emissions, hazardous materials, liquids and chemicals, glare, radioactive materials, wastewater and traffic. N.J.A.C. 19:4-7.