AUGUSTINE V. CAMMARATA AND RICHARD COSTA, PLAINTIFFS-APPELLANTS, v. ESSEX COUNTY PARK COMMISSION AND ROBERT B. KINSEY, DEFENDANTS-RESPONDENTS.

Argued March 3, 1958—Decided April 3, 1958.

406

*Mr. Abraham L. Friedman* argued the cause for appellants (*Mr. Doane Regan,* attorney).

*Mr. John J. McDonough* argued the cause for respondents (*Mr. William G. Wood,* on the brief; *Messrs. Darby & McDonough,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. This is an action in lieu of prerogative writ whereby plaintiffs seek "reinstatement" as members of the Park Police of Essex County, contending that they were illegally dismissed in violation of the tenure provisions of the County Parks Act. The Superior Court, Law Division, entered judgment directing the Essex County Park Commission to "restore" plaintiffs to their positions, but the

Appellate Division reversed. We granted plaintiffs' petition for certification.

On June 17, 1954 the Essex County Park Commission authorized its police director, defendant Robert B. Kinsey, to commence examination of applicants who had applied for appointment as park police patrolmen, with a view toward filling a number of vacancies then existing on the force. At the same time, the commission unanimously approved a motion "that any person qualifying for a position as a patrolman on the Park Police of the County of Essex be employed for a probationary period of one year, during which time, upon recommendation of the Chief to the Board, the man's services may be discontinued, and at the end of the probationary period appointments to the force would be made only upon the report of the Chief that the individual had qualified."

Plaintiffs Cammarata and Costa applied for appointments as patrolmen in February of 1955. After they had taken the requisite examinations and been personally interviewed, each man was notified by a letter dated March 4, 1955 that he would be appointed a "probationary Patrolman" effective March 25, 1955. Each of these letters stated: "Your appointment to this Department is subject to your clearly understanding and accepting the provisions shown on the sheet attached hereto."

The "sheet" referred to is entitled "Information for Applicants for Appointment as Probationary Patrolmen." Its first paragraph reads:

"Applicants successfully meeting the requirements of the Department will be appointed for a probationary period of one year and will be sworn in as *probationary* members of the Department. During said period of probation, if at any time in the opinion of the superior officers of the Department, the Director, the Police Committee or the Essex County Park Commission an applicant does not continue to justify his employment, he may be immediately terminated. At the termination of his probationary period, the applicant's record in the Department for the preceding year will be reviewed and if found satisfactory, he will become a regularly appointed Patrolman in the Department. Failure to qualify will preclude appointment to the department."

Cammarata and Costa each signed and returned an "Information for Applicants for Appointment as Probationary Patrolmen" form to the police director, affixing his respective signature directly beneath a provision reading: "I hereby certify that I have read, understand, acknowledge and accept the information and regulations stated above."

Four other applicants were hired by the park commission on a probationary basis at the same time as plaintiffs. During the course of their year of probation the performance of each was investigated and assessed several times by an evaluation committee. Near the end of the year, the committee's findings were reviewed by the chief of the park police, the Police Director of the Essex County Parks and an independent personnel expert. This reviewing body found that four of the probationary patrolmen had met the requirements of the department and that two had not. The park commission accepted the recommendations of the reviewing board and accordingly, on March 15, 1956, resolved that four "Probationary Patrolmen" be "appointed Regular Patrolmen of the Park Police Department" and that "the services of Augustine V. Cammarata and Richard F. Costa, those Probationary Patrolmen failing to qualify for appointment, be terminated. * * *"

*R. S.* 40 :37–156 provides in part as follows:

"No member or officer of the police force or police department shall be removed except after trial and conviction by the park commission, or a member or members thereof, of the violation of proper rules and regulations for the appointment, control and management of members of such force or department and for the securing of proper discipline and efficiency among the members thereof."

Plaintiffs contend they were dismissed illegally since the park commission did not prefer charges and grant them a hearing within the intendment of *R. S.* 40 :37–156. They base their case upon the assertion that the commission has no power to create a probationary status for its appointees. For this reason, they insist that they must have been appointed as regular patrolmen subject to the illegal condition

subsequent that they would remain on probation for one year, that the validity of the appointments is unimpaired by the illegality of the annexed condition, and that therefore they were and always have been permanent members of the park police who enjoy tenure during good behavior and cannot be discharged except after hearing and for good cause shown.

None of the relevant statutes expressly empowers the park commission to establish a period of probationary service for newly employed patrolmen. Defendants urge, however, that a legislative grant of such authority is implicit in the terms of *R. S.* 40:37–154, which reads, in part:

"The commission may establish proper rules and regulations for the appointment, control and management of the members of the constabulary, and for the securing of proper discipline and efficiency among the members thereof."

 It is settled beyond controversy that the Legislature may enact statutes setting forth in broad design its intended aims, leaving the detailed implementation of the policy thus expressed to an administrative agency. See *Lane v. Holderman*, 23 *N. J.* 304, at *pages* 319-320 (1957), and the cases and statutes cited and discussed therein. Indeed, the function of promulgating administrative rules and regulations lies at the very heart of the administrative process. Through the entrustment of such powers, our lawmakers achieve expert and flexible control in areas where the diversity of circumstances and situations to be encountered forbids the enactment of legislation anticipating every possible problem which may arise and providing for its solution. *Como Farms, Inc., v. Foran*, 6 *N. J. Super.* 306, 313 (*App. Div.* 1950) ; 42 *Am. Jur., Public Administrative Law*, §§ 4 and 35. There is no unconstitutional delegation of legislative authority as long as the administrative discretion is hemmed in by standards sufficiently definitive to guide its exercise. 1 *Sutherland, Statutory Construction* (*3d ed.* 1943), § 314.

The Constitution of 1947 enjoins us to construe laws "concerning counties" liberally in their favor and provides

that their powers "shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto. * * *" *Art.* IV, *Sec.* VII, *par.* 11. Since we are concerned here with the powers of the Essex County Park Commission and not with those of the board of freeholders, plaintiffs argue that the quoted section is inapplicable. In our view of the case, there is no necessity for resorting to the constitutional provision and therefore we do not resolve the subsidiary issue as to its meaning.

▮ The grant of an express power is always attended by the incidental authority fairly and reasonably necessary or appropriate to make it effective. *Lane v. Holderman, supra,* 23 *N. J.* at *page* 315; *Jersey City v. State Water Policy Comm.,* 118 *N. J. L.* 72 (*E. & A.* 1937); 3 *Sutherland, supra* at § 6604; 73 *C. J. S. Public Administrative Bodies and Procedure* § 50. See *Tanis v. Passaic County,* 126 *N. J. L.* 303, 305 (*E. & A.* 1940); *Belfer v. Borrella,* 9 *N. J. Super.* 287, 293 (*App. Div.* 1950). Authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. 42 *Am. Jur., supra* at § 26. The purpose of the statute is not to be frustrated by an unduly narrow interpretation.

▮ We think the park commission has the power to establish a probationary status for its patrolmen as a necessary adjunct of the specific grant of authority to maintain a park police system and to promulgate regulations governing the appointment of its members. The requirement of probationary service is a reasonable regulation; in fact, almost necessary for, among other things, the "securing of proper discipline and efficiency."

▮ The members of the park police occupy sensitive positions, and the manner in which they perform their duties is intimately related to the welfare of the public with whom they come into frequent contact. Recent experience has demonstrated that if our parks are not policed effectively they may well become places of peril rather than of pleasure.

Setting up a probationary period is a justifiable exercise of administrative discretion, properly designed to satisfy the legislative intent that our parks should be preserved as reasonably safe recreational areas for all.

It is difficult to evaluate the character, industry, personality, and responsibility of an applicant from his performance on a written examination or through cursory personal interviews. Knowledge and intelligence do not alone make a good policeman. The crucial test of his fitness is how he fares on the job from day to day when suddenly confronted by situations demanding a breadth of resources and diplomacy. Many intangible qualities must be taken into account, and, since the lack of them may not constitute good cause for dismissal under a tenure statute, the park commission is entitled to a period of preliminary scrutiny, during which the protection of tenure does not apply, in order that it may make pragmatically informed and unrestricted decisions as to an applicant's suitability.

In 1906 the Legislature amended the original County Parks Act, L. 1895, c. 91, to permit the establishment of constabulary organizations to be known as the park police. At that time, county park policemen could be removed from office at the pleasure of the county park commissions which they served. L. 1895, c. 91, § 1, as amended by L. 1906, c. 102, § 1. The tenure section, R. S. 40:37–156, upon which plaintiffs rely was enacted as part of the Parks Act in 1928. L. 1928, c. 233, § 1. By statutes becoming effective in 1957, L. 1956, c. 232 and L. 1957, c. 98, the officers and employees of the various park commissions are placed under the protection of the Civil Service Act, which provides for probationary service before permanent appointment, R. S. 11:22–6, thus mooting, for the future, the issue under discussion. These latter statutes do not, however, apply to plaintiffs, who were dismissed in 1956.

■■ Cammarata and Costa maintain that since that portion of R. S. 40:37–154 empowering the commission to "establish proper rules and regulations for the appointment * * * of the members of the constabulary" was enacted

in 1906, at a time when the park commission could remove its appointees at its unrestrained pleasure, the Legislature could not have intended the cited phrase to encompass authority to hire on probation. They argue that this is so because there is no need or reason for a probationary status when the employer can terminate the employee's services at any time in his own discretion.

The answer to this contention has already been adverted to in the foregoing consideration of the legislative purpose in delegating broad rule-making powers to an administrative agency. The essential object is to permit and to encourage the adoption of administrative regulations which are suited to the exigencies of unforeseen and changing circumstances. The Legislature contemplated that the park commissions should have all of the powers concerning appointments reasonably needful to insure selection of a well qualified constabulary. Certainly, an intention to deny completely the power of the respective park commissions ever to establish a probationary status for patrolmen cannot be inferred from the mere fact that there apparently was no necessity for the creation of such a status in the year 1906.

We find no merit to plaintiffs' argument that simply because other and unrelated statutes, primarily the Civil Service Act, expressly provide for periods of probationary service, *R. S.* 40:37–154 cannot be deemed to permit the requirement of such.

Plaintiffs also contend that even if it be decided that their appointments on a probationary basis were entirely valid, a one-year period of probation is unreasonably long. This is primarily a matter for the exercise of a sound discretion and there is no showing that the administrative prerogative has been abused. Each newly hired patrolman spends a considerable portion of his probationary service in training at the State Police School and in learning the rudiments of his job from experienced, permanent park police officers. The length of time occupied by theoretical work diminishes the opportunity for judging on-the-job performance, the principal reason for the creation of the

probationary status. We think plaintiffs have failed to demonstrate that a requirement of one year's probation is unreasonable under the circumstances *sub judice*.

Our decision turns upon our conclusion that the park commission had power to make appointments probationary in nature. But even if we assumed the commission lacked such power, it is difficult to perceive how this would enable plaintiffs to prevail.

They were never appointed regular, permanent members of the Essex County Park Police. Such appointments were to be made only upon fulfillment of the *condition precedent* that they satisfactorily complete their year of probationary service. The park commission did not see fit to make them permanent officers and, in fact, it affirmatively found they were unqualified for such positions. Plaintiffs are asking for "reinstatement" to a status they never actually enjoyed. The situation *sub judice* is readily distinguishable from those cases where there was a valid appointment to an existing office and only the extent of the term was in controversy. *E. g., Lohsen v. Borough of Keansburg,* 4 *N. J.* 498 (1950); *Sheridan v. McCurnin,* 124 *N. J. L.* 493 (*Sup. Ct.* 1940). Compare *State ex rel. Wm. Eckelmann, Inc., v. Jones,* 4 *N. J.* 207 (1950).

Plaintiffs were completely cognizant of the tentative nature of their employment and assented in writing to its limitations. They were fully paid for the work they performed. Even if both sides misapprehended the legality of the probationary appointments, this mutual mistake could not create for plaintiffs a better position than the one originally contemplated nor elevate them to a higher office than the one for which they had applied.

The Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.