124 N.J. Super. 62 (1973)
304 A.2d 754
RITE AID OF NEW JERSEY, INC., A CORPORATION OF NEW JERSEY, ET AL., APPELLANTS,
v.
BOARD OF PHARMACY OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1973.
Decided May 8, 1973.
*64 Before Judges COLLESTER, LEONARD and HALPERN.
Mr. Theodore W. Geiser argued the cause for appellants (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys; Mr. Mark L. Fleder, on the brief).
Mr. Bertram P. Goltz, Jr., Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., *65 Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was rendered by COLLESTER, P.J.A.D.
This is an appeal by Rite Aid of New Jersey, Inc., and nine other retail pharmacists, from a regulation promulgated by the New Jersey Board of Pharmacy (Board) requiring pharmacists to maintain a patient profile record system.
The regulation requires a pharmacist to record information concerning each person for whom prescriptions are dispensed, including, among other things, the name, address and age group of such "patient," the name of the prescribing physician, and the name, strength and quantity of the drug dispensed. It also provides that the pharmacist shall attempt to ascertain and shall record any allergies or idiosyncrasies of the patient and any chronic conditions which may relate to drug utilization, as communicated to the pharmacist by the patient; that upon receipt of a prescription the pharmacist must examine the patient's profile record before dispensing the medication to determine the possibility of a harmful drug interaction or reaction; that upon recognizing a potential harmful reaction or interaction the pharmacist shall take appropriate action to avoid or minimize the problem, which shall, if necessary, include consultation with the physician.
Prior to adoption of the regulation a public hearing was conducted by the Board at which arguments were presented supporting or opposing its adoption. On February 24, 1972 the regulation was adopted by the Board to become effective July 31, 1972. The objecting pharmacists appealed and the effective date of the regulation was stayed pending final disposition of the appeal.
Appellants first contend that the promulgation of the regulation exceeds the authority delegated by the Legislature to the Board. They allege that the Legislature by statute has prescribed exactly what records are to be kept, the manner *66 of record keeping in connection with the dispensing of prescription drugs, and the limited power of regulation granted to the Board regarding the same.
N.J.S.A. 45:14-15, in substance, provides that a pharmacist shall keep a prescription on file for five years and shall affix to the prescription container a label bearing the name of the pharmacy, the date the prescription was compounded, an identifying number, the name of the physician (or other licensed practitioner) prescribing it, and directions for its use as provided for by the physician. The pharmacist who fills the prescription must place his name or initials on the original prescription or in a book kept for the purpose of recording prescriptions. The statute also empowers the Board of Pharmacy or its agents to inspect the prescription files and other prescription records of the pharmacy. N.J.S.A. 45:14-17 provides that the Board shall have the power to make rules and regulations for the enforcement of section 15.
Appellants argue that where the Legislature has spoken with such particularity on the subject of record keeping there is no authority for the Board to adopt a regulation which requires record keeping beyond that specified in the statute and that the Board is limited to making appropriate rules and regulations for enforcement of the statute.
We are satisfied that appellants read the statute regulating the practice of pharmacy too narrowly. It is settled beyond question that the grant of an express power by the Legislature is always attended by such incidental authority as is fairly and reasonably necessary or appropriate to make it effective, and authority granted to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. The purpose of the statute is not to be frustrated by an unduly narrow interpretation. Cammarata v. Essex County Park Comm'n, 26 N.J. 404, 411 (1958). In Cammarata the court stated that the Legislature may enact statutes setting forth in broad design its intended aims, leaving the detailed implementation *67 of the policy thus expressed to an administrative agency. The court said:
Indeed, the function of promulgating administrative rules and regulations lies at the very heart of the administrative process. Through the entrustment of such powers, our lawmakers achieve expert and flexible control in areas where the diversity of circumstances and situations to be encountered forbids the enactment of legislation anticipating every possible problem which may arise and providing for its solution. [at 410]
It seems unnecessary to state that the objective of Chapter 14 of Title 45 regulating the practice of pharmacy is to protect the health and welfare of members of the public. Section 15, requiring certain record keeping by the pharmacist, was enacted in furtherance of that objective. As stated in Cammarata, quoted above, the Legislature in enacting section 15 could not be expected to anticipate every possible problem which might arise with regard thereto and provide for its solution.
The evidence submitted to the Board in this case clearly pointed out the dangers inherent in the compounding and dispensing of prescription drugs due to harmful interaction or reaction because of allergies or idiosyncracies of the patient. Following argument of this appeal our attention was called to public articles by physicians and leading researchers urging record keeping of medication profiles of persons for whom prescriptions are written. Dr. Milton Silverman, professor of pharmacology of the University of California, was recently quoted by the press as stating that there were about 24,000 deaths each year in the United States from adverse reaction to drugs. In another article Dr. Karl Neumann of Cornell Medical College urged the keeping of medication profiles by pharmacists. He pointed out that while the Federal Drug Administration could control the ready-prepared combinations of drugs, only the pharmacist is in a position "to see and know what potentially horrendous combinations the public buys over the counter." He said *68 that by keeping records of all purchases, staying abreast of the latest reports on toxicity, noting previous allergic and adverse reactions of individuals and recording excessive purchases of any one time, the pharmacist could suddenly become one of the most important members of the "health team."
The patient profile record system regulation promulgated by the Board is designed to eliminate or lessen the dangers referred to above. It is in furtherance of the monitoring policy by a pharmacist referred to in Supermarkets Gen. Corp. v. Sills, 93 N.J. Super. 326, 338, 341 (Ch. Div. 1966).
With the changing times, the development of more diversified drugs, and knowledge gained by research of the dangers of interaction and reaction to members of the public, it is obvious that the control of prescription drugs is an area in which the enactment of specific legislation cannot anticipate every possible problem which may arise. A consideration of the overall provisions of Chapter 14 convinces us that the Board has implicit authority to expand the record keeping requirements by the pharmacist now provided by section 15 to meet the health hazards to which we have referred.
While appellants state in their brief that they do not contend that maintenance of such records required by the regulation is without merit, they argue that the regulation is unreasonable. They claim, among other things, that implementation of the regulation would increase operating costs which would eventually be passed on to the consumer; that it would interfere with the physician-patient privilege that protects the confidentiality of medical prescriptions which must be guarded by pharmacists; that the regulation suffers from lack of reliability of the information to be recorded, and that it would place a greatly increased and undue potential liability burden upon the pharmacist.
The administrative action taken by the Board must be accorded a presumption of reasonableness, and appellants have the burden of satisfying the court that the regulation is unreasonable. Consolidation Coal Co. v. Kandle, 105 N.J. *69 Super. 104, 118 (App. Div. 1969), aff'd 54 N.J. 11 (1969). We have carefully examined the record and conclude that appellants have not sustained that burden. The Board had before it sufficient evidence indicating that the patient profile record system regulation would be practicable and have little economic impact upon pharmacies, and would not interfere with the physician-patient privilege or increase liability of the pharmacists. In fact, there was evidence adduced that some pharmacists have successfully utilized such a system for years.
Accordingly, the validity of the regulation is sustained.