764 A.2d 1035 (2001)
Application of Andrew LEWIS, by Norma LEWIS, Parent and a Trustee of the Andrew J. Lewis Fund, Appellant,
v.
CATASTROPHIC ILLNESS IN CHILDREN RELIEF FUND COMMISSION OF THE STATE OF NEW JERSEY, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 2000.
Decided January 19, 2001.
*1036 George Duggan, Newark, argued the cause for appellant.
Pamela N. Ullman, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Ms. Ullman, on the brief).
Before Judges EICHEN and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Norma Lewis (the applicant), who is the mother of Andrew J. Lewis, and a cotrustee *1037 of the Andrew J. Lewis Trust,[1] appeals from a final determination of the Catastrophic Illness in Children Relief Fund Commission (the Fund) denying her application for reimbursement to the Trust of $41,295 that it paid for a Dodge van and modifications thereto which were necessary to permit Andrew and his wheelchair to be transported. We affirm.
The Catastrophic Illness in Children Relief Fund Act, (the Act), N.J.S.A. 26:2-148 to 159, was passed in 1987, to take effect on January 7, 1988. One of the purposes of the Act was "that each child of this State should have access to quality health care and adequate protection against the extraordinarily high costs of health care services which are determined to be catastrophic and severely impact upon a child and his family." N.J.S.A. 26:2-148(d). To that end, the legislature considered it incumbent "to provide assistance to children and their families whose medical expenses extend beyond the families' available resources." N.J.S.A. 26:2-148(e).
A catastrophic illness is defined as "any illness or condition the medical expenses of which are not covered by any other State or federal program or any insurance contract and exceed 15% of the first $100,000 of annual income of a family plus 20% of the excess income over $100,000." N.J.S.A. 26:2-149(a).
N.J.S.A. 26:2-154(b) requires the Commission to establish procedures "to provide that, in the case of an illness or condition for which the family, after receiving assistance pursuant to this act, recovers damages for the child's medical expenses pursuant to a settlement or judgment in a legal action, the family shall reimburse the fund for the amount of assistance received, or that portion thereof covered by the amount of the damages less the expense of recovery." N.J.S.A. 26:2-150. The moneys necessary to establish and meet the purposes of the Fund are generated by a one dollar annual surcharge per employee for all employers who are subject to the New Jersey Unemployment Compensation Law. N.J.S.A. 26:2-157.
In addition, the Catastrophic Illness in Children Relief Fund Commission (the Commission) was established, N.J.S.A. 26:2-151, and was charged with the responsibility of administering the fund. Pursuant to N.J.S.A. 26:2-154(c), the Commission is authorized to "adjust the financial eligibility criteria established pursuant to" N.J.S.A. 26:2-149 "based upon the moneys available in the fund." In addition, the Commission is authorized to "[a]dopt rules and regulations in accordance with the `Administrative Procedure Act,' P.L.1968, c. 410 (C. 52:14B-1 et seq.) necessary to effectuate the purposes of this Act." N.J.S.A. 26:2-154(i).
The Commission adopted regulations to further aid in determining eligibility under the program. Specifically, N.J.A.C. 10:155-1.2 defines catastrophic illness as follows:
"`Catastrophic illness' means any illness or condition for which the incurred medical expenses not covered by any State or Federal program or any other insurance contract or trust funds or settlements relative to the medical condition of a child exceed 10 percent of the first $100,000 of annual income of a family plus 15 percent the excess income over $100,000." [Emphasis added].
The effect of the underscored portion of the regulation is to eliminate from consideration, not only medical expenses that are covered by any other State or federal program or any insurance contract, pursuant to N.J.S.A. 26:2-149(a), but also to eliminate from consideration expenses that are covered by trust funds or settlements relative to the medical condition of the child.
Andrew was born on October 5, 1988, and has severe disabilities resulting from a premature birth. He suffers from cerebral palsy, mental retardation, visual impairments, and experiences grandmal seizures. *1038 He is unable to speak, feed himself, bathe himself, or walk further than a few steps at a time with the aid of a walker.
Andrew's parents instituted a medical malpractice claim which resulted in a net recovery of $96,004.07 that was placed in a Special Needs Trust (SNT).[2] Under the terms of the SNT, the trustees are authorized to make disbursements for Andrew's special needs, including, inter alia, transportation. The funds are not intended to "displace or supplant public assistance or other sources of support" which might otherwise be available to Andrew. The SNT further provided that "[f]or purposes of determining [Andrew's] public assistance eligibility, no part of the principal or undistributed income of the Trust shall be considered available to [Andrew]." Indeed, in the event the trustees are required to release trust principal or income of the Trust on Andrew's behalf to pay for benefits or services which are also available through public assistance, were it not for the existence of the Trust, the trustees are authorized to take whatever administrative or judicial steps may be necessary to continue Andrew's public assistance program eligibility. Finally, upon Andrew's death, any assets remaining in the Trust are to be used to reimburse the New Jersey Division of Medical Assistance and Health Services for medical assistance paid on his behalf during his lifetime. The balance of the assets remaining in the Trust, if any, are to pass through Andrew's estate.
The van was purchased in the latter part of 1996. On September 21, 1998 the applicant sought reimbursement from the Fund for the cost of the van and its modifications.
Although not clear from the record, apparently the applicant had advised the Commission that the funds for the van had been lent to her by her in-laws. Accordingly, on October 16, 1998, Lynne J. Alexander, an eligibility co-ordinator for the Fund, wrote to her requesting "additional information pertaining to your loan which references that you have a legal obligation to repay the loan. Your in-laws will need to prepare a statement reflecting your loan obligations," which would have to be notarized. By letter dated November 16, 1998 the applicant supplied her 1996 tax return, and also advised that she was misinformed regarding the loan from her in-laws. She stated that she and her husband had discussed borrowing the money from his parents and she "was under the impression that was where we had gotten it from. We in fact took the money from funds we had set aside for other purposes (buying a new house)."
At some point that is not disclosed in the record, the applicant advised Alexander that a trust had been established for Andrew. Accordingly, on December 3, 1998, Alexander wrote Lewis and advised that the Commission required "additional information on the trust account if it were a result of the settlement" and further provided that "[if] the moneys for the vehicle and/or modification were drawn out of a trust account, the Commission will be unable to consider these expenses since you have another resource available to you." The letter also stated that additional information on the trust account was required "if it were a result of a settlement."
In response, the applicant sent bank statements but did not advise as to whether the Trust was established as a result of a settlement. Finally, she sent a copy of the Trust agreement.
After reviewing the Trust agreement, the Commission concluded that the van and modifications did not meet the definition of catastrophic illness as set forth in the regulation, since it had been paid for from the Trust that had been established as a result of a settlement relative to Andrew's *1039 medical condition. See N.J.A.C. 10:155-1.2.
On this appeal the applicant raises the following arguments:
POINT I THE RELEVANT EXPENSES WERE $41,195. THE FAMILY'S WAGES WERE $83,229.28. THE EXPENSES EXCEEDED 10% OF THE FAMILY INCOME, ANDREW LEWIS HAS A CATASTROPHIC ILLNESS BASED ON WAGES ONLY
POINT II THE TRUST FUND IS INCOME. THE EXPENSES STILL EXCEED THE THRESHOLD. ANDREW HAS A CATASTROPHIC ILLNESS
POINT III THE EXPENSES ARE NOT COVERED BY ANY OTHER STATE OR FEDERAL PROGRAM OR ANY INSURANCE CONTRACT. THE FAMILY IS ELIGIBLE EVEN THOUGH THE TRUST WAS ESTABLISHED BY LEGAL ACTION
Essentially, the applicant argues that (1) Andrew has a catastrophic illness, as defined in N.J.A.C. 10:155-1.2 and the applicant, therefore, is entitled to reimbursement from the Fund for the expenses incurred; (2) N.J.A.C. 10:155-1.2 is invalid because it goes beyond the statute by excluding from the definition of catastrophic illness expenses that are covered by trust funds or settlements relative to the medical condition of the child.
In her reply brief, the applicant raises the following arguments:
POINT I N.J.A.C. 10:155[SIC] SUBSTANTIALLY CHANGED THE MEANING OF CATASTROPHIC ILLNESS AS DEFINED IN N.J.R.S. [SIC] 26:2-149. THE FUND HAD NO AUTHORITY TO DO THIS
POINT II THE FUND HAS NO EXPRESS POWER TO CHANGE THE LEGISLATURE'S DEFINITION OF CATASTROPHIC ILLNESS. THEREFORE IT HAS NO IMPLICIT POWER TO DO SO
POINT III THE COMMISSION IS NOT ENTITLED TO REIMBURSEMENT UNLESS THE FAMILY OBTAINS A SETTLEMENT OR JUDGMENT "AFTER THE ASSISTANCE"[3]
Our scope of review of an administrative regulation is extremely narrow. New Jersey State League of Municipalities v. Department of Community Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999), citing Lower Main St. Assocs. v. New Jersey Hous. & Mortgage Fin. Agency, 114 N.J. 226, 236, 553 A.2d 798 (1989). Administrative regulations are accorded a presumption of validity. New Jersey State League of Municipalities, supra, 158 N.J. at 222, 729 A.2d 21. The party challenging their validity bears the burden of proving that the regulations are arbitrary, capricious or unreasonable, ibid., or beyond the scope of the delegated power. Alevras v. Delanoy, 245 N.J.Super. 32, 36, 583 A.2d 778 (App.Div.1990), certif. denied, 126 N.J. 330, 598 A.2d 888 (1991). To be valid, a regulation must be within the fair contemplation of the delegation of the enabling statute. Ibid. Because of the principle that the coordinate branches of government should not encroach on each other's responsibilities, we have a strong inclination to defer to agency action provided it is consistent with the legislative grant of power. In re Township of Warren, 132 N.J. 1, 26, 622 A.2d 1257 (1993).
We may invalidate a regulation only in those rare instances when it is clear that the agency action is inconsistent *1040 with the legislative mandate. Ibid. Moreover, the legislative grant of authority to an administrative agency must be liberally construed to enable the agency to accomplish its statutory responsibilities. New Jersey State League of Municipalities, supra, 158 N.J. at 223, 729 A.2d 21. Consequently, we must readily imply such "incidental powers as are necessary to effectuate fully the legislative intent." Ibid. (citations omitted). In addition, the absence of an express statutory authorization in the enabling statute does not preclude administrative rule-making agency action where, by reasonable implication, that action promotes or advances the policies and findings that served as the driving force for the enactment of the legislation. Ibid. The authority granted to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. Cammarata v. Essex County Park Commission, 26 N.J. 404, 411, 140 A.2d 397 (1958); Rite Aid of New Jersey, Inc. v. Board of Pharmacy, 124 N.J.Super. 62, 66, 304 A.2d 754 (App. Div.), certif. denied,63 N.J. 503, 308 A.2d 668 (1973). Accordingly, reviewing courts generally disfavor a finding that an administrative agency acted in an ultra vires fashion in adopting regulations. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978). The promulgation of administrative rules and regulations lies at the very heart of the administrative process, permitting "expert and flexible control in areas where the diversity of circumstances and situations to be encountered forbids the enactment of legislation anticipating every possible problem which may arise and providing for its solution." Cammarata, supra, 26 N.J. at 410, 140 A.2d 397.
Applying these principles of law, we reject the applicant's contention that N.J.A.C. 10:155-1.2 is invalid insofar as it excludes from the definition of catastrophic illness those expenses for which either trust funds, or funds from a settlement realized relative to the medical condition of a child are available to pay for the expenditure. We recognize in this regard that the regulation expands upon the statutory definition of catastrophic illness in that it not only excludes from consideration those expenses which are covered by another State or federal program or any insurance contract, pursuant to N.J.S.A. 26:2-149(a), but also those expenses which may be covered by a trust fund or settlement. Nevertheless, we conclude that N.J.A.C. 10:155-1.2 is consistent with the purposes of the Act by providing assistance to children and their families whose medical expenses extend beyond the families' available resources. N.J.S.A. 26:2-148(e). The regulation is consistent with, and furthers the legislative goal, by making the Fund available to those who do not have the benefit of a trust or personal injury recovery and by requiring those who have a trust or personal injury recovery, which is relative to the medical condition of the child, to use those assets before resort to the Fund. The challenged portion of the regulation protects the fiscal integrity of the Fund, thereby preserving it for the benefit of those truly in need. The legislature, in linking eligibility to a percentage of income, has demonstrated an intent to give priority to those truly in need.
Moreover, and as previously noted, N.J.S.A. 26:2-154(b) requires the Commission to establish procedures "to provide that, in the case of an illness or condition for which the family, after receiving assistance pursuant to this act, recovers damages for the child's medical expenses pursuant to a settlement or judgment in a legal action, the family shall reimburse the fund for the amount of assistance received, or that portion thereof covered by the amount of the damages less the expense of recovery." This statutory provision is indicative of the legislative intent to deny eligibility for reimbursement from the Fund if the family has recovered damages for the child's medical expenses pursuant to a settlement or judgment in a legal action. We cannot conceive that the legislature *1041 intended to allow access to the Fund if there had already been a recovery, yet require reimbursement to the Fund out of the proceeds of a subsequent recovery. The addition in N.J.A.C. 10:155-1.2 of the trust provision and provisions regarding recovery by way of settlement or a judgment is consistent with the legislative intent to deny access to the Fund in both situations in order to protect the fiscal integrity of the Fund, and, consequently to provide assistance to children and their families whose expenses extend beyond the families' available resources, N.J.S.A. 26:2-148(e), as well as to assure that each child of this State should have access to quality health care, N.J.S.A. 26:2-148(d).
Accordingly, we conclude that the Fund correctly determined that the availability of the Trust renders the applicant ineligible for reimbursement due to the existence of this trust itself, as well as the settlement which compensated Andrew for his injuries and contemplated the special needs that Andrew would experience throughout his lifetime. N.J.A.C. 10:155-1.2.
To the extent we may not have specifically addressed any of the applicant's contentions, we have considered them and reject them as being without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] The other trustee is Roderick A. Lewis, Andrew's father.
[2] A SNT is a trust designed to defray the costs of medical care that are not covered by any other public or private benefits program. Waldman v. Candia, 317 N.J.Super. 464, 467, 722 A.2d 581 (App.Div.1999), n. 2.
[3] It would appear that these issues were belatedly raised in the reply brief. We note that it is improper to raise an issue initially in a reply brief. State v. Smith, 55 N.J. 476, 488, 262 A.2d 868 (1970) cert. denied, 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970); Warren Tp. v. Suffness, 225 N.J.Super. 399, 412, 542 A.2d 931 (App.Div.) certif. denied, 113 N.J. 640, 552 A.2d 166 (1988).