# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0839-20
A-1901-20

IN THE MATTER OF E.C.
BY I.C.[1] AS PARENT AND
NATURAL GUARDIAN,

    Appellant,

v.

CATASTROPHIC ILLNESS
IN CHILDREN RELIEF
FUND COMMISSION,

    Respondent.

_____

R.Z.,

    Appellant,

v.

CATASTROPHIC ILLNESS
IN CHILDREN RELIEF
FUND COMMISSION,

---

[1] We use the parties' initials to protect the children's privacy. The matters are sealed. R. 1:38-11(b)(2).

Respondent.

Submitted March 17, 2022 – Decided March 28, 2022

Before Judges Mawla and Mitterhoff.

On appeal from the New Jersey Catastrophic Illness in Children Relief Fund Commission.

Ofeck & Heinze, LLP, attorneys for appellant E.C. (Mark F. Heinze, on the briefs).

Elias L. Schneider, attorney for appellant R.Z.

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Catastrophic Illness in Children Relief Fund Commission (Melissa H. Raksa, Assistant Attorney General, of counsel; Francis X. Baker, Deputy Attorney General, on the brief in A-0839-20; Michael R. Sarno, Deputy Attorney General, on the brief in A-1901-20).

PER CURIAM

In A-0839-20 appellant I.C. on behalf of his daughter E.C. appeals from an October 13, 2020 final decision by respondent the Catastrophic Illness in Children Relief Fund Commission (Commission) denying reimbursement for out-of-network medical expenses. In A-1901-20, appellant R.Z. appeals from a February 8, 2021 final decision denying reimbursement for her out-of-network psychological expenses. We consolidate the appeals for purposes of this opinion and now affirm.

A-0839-20

As a toddler, E.C. fell out of a second story window, suffering a traumatic brain injury and has quadriplegia, vision and hearing loss, ligamentous laxity of both feet, among other medical disabilities. She requires extensive medical care, including feeding therapy and intensive physical therapy.

I.C. submitted four claims to the Catastrophic Illness in Children Relief Fund (fund) for reimbursement of therapeutic services rendered by out-of-network providers to E.C. between November 1, 2015 and October 31, 2019. E.C. had comprehensive health insurance coverage through New Jersey FamilyCare when she received the out-of-network treatments. The executive director of the fund sent a letter to I.C. denying the claims, advising as follows:

> According to a recent policy review by the Commission effective for applications received on or after October 1, 2019, [the fund's] statute and regulations do not support payment for ambulatory services received from out-of-network providers or facilities, where the use of out-of-network provider or facility by a child with comprehensive health insurance was not inadvertent, urgent, or due to an emergency.

I.C. appealed from the denials, explaining he took E.C. to in-network providers for therapy but "she made no gains with that therapy." Once he sought treatment with out-of-network providers, E.C. "saw immediate and consistent progress; tremendous gains within the first weeks and continuing throughout the years." I.C. mailed the reimbursement application by regular mail on Sunday,

September 29, 2019, the same day he learned of the policy. He was not able to express mail the documents the next day because he was observing Rosh Hashanah. The Commission received I.C.'s application on October 4, 2019.

The Commission denied the appeals for the same reasons. It pointed to an advisory bulletin issued on September 20, 2019, as the legal basis for denial of the appeals, which we will discuss further below.

R.Z. is a sixteen-year-old girl diagnosed with attention-deficit/hyperactivity disorder (ADHD) inattentive type, generalized anxiety disorder, oppositional defiant disorder, and developmental and conduct disorder. She has comprehensive medical coverage through New Jersey FamilyCare. She began psychotherapy with an out-of-network psychologist on May 28, 2019, enrolled with the psychologist on October 27, 2019, and saw the psychologist for thirteen appointments throughout 2019.

R.Z.'s parents, who are Jewish orthodox, wrote to the fund explaining they chose the psychologist, who happened to be the first and only one R.Z. saw, by networking through family and friends. The psychologist was

> well-known in her ability to work with troubled teens and was literally the only practitioner that we [could] find within a [thirty-to-forty] mile[] radius[] who was able to help her while identifying with the specific lifestyle needs[] we have. Unfortunately, locally, there is no one who was able to meet our needs, with her

4

credentials in pediatric psychology, and a lifestyle background similar to our own.

She is familiar with [R.Z.'s] school system and curricula, as well as the peer pressures and complicated dynamics which [R.Z.] faces daily, both at home, in her community, and in her school.

The psychologist issued a report echoing the parents' representations.

R.Z.'s parents filed a claim for reimbursement of the psychologist's expenses on January 29, 2020. They explained they contacted their insurance to look for in-network providers but received a list of social workers rather than psychologists or psychiatrists. Based on this information, they did not contact their insurance to see if it would pay for out-of-network services because they "simply thought that if they don't even have a provider on their list[,] certainly they wouldn't pay for someone out[-]of[-]network[.]"

The fund denied the request for reimbursement. In discussions evaluating R.Z.'s appeal, the Commission vice-chair noted "[a]nxiety and ADHD are relatively common conditions in our field so [it is] hard to justify that [R.Z.] needed a very special specialist and no other existed for [thirty-to-forty] miles . . . ." She also noted treatment centers close to R.Z.'s home and moved to uphold the denial of reimbursement. For the same reasons as in E.C.'s case, the

Commission issued written findings denying the appeal and cited the bulletin explaining its policy.

I.

The scope of review of an administrative decision is limited. Lewis v. Catastrophic Illness in Child. Relief Fund Comm'n, 336 N.J. Super. 361, 369 (App. Div. 2001). The court "must defer to an agency's expertise and superior knowledge of a particular field." Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 301 (2011) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"[T]he legislative grant of authority to an administrative agency must be liberally construed to enable the agency to accomplish its statutory

6

responsibilities" and "permit the fullest accomplishment of the legislative intent." Lewis, 336 N.J. Super. at 370. To reverse the exercise of authority by an agency, we must find the "decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019) (alteration in original) (quoting Stallworth, 208 N.J. at 194).

II.

The fund is a non-lapsing, revolving fund with the power to authorize payments or reimbursement of medical expenses of children with catastrophic illnesses. N.J.S.A. 26:2-150; N.J.S.A. 26:2-154(a). The fund is governed by its Commission whose duties are to review and decide applications for financial assistance and develop policies and procedures for the fund's operation. N.J.S.A. 26:2-154(b); N.J.S.A. 26:2-156.

A catastrophic illness is "any illness or condition the medical expenses of which are not covered by any other State or federal program or any insurance contract . . . ." N.J.S.A. 26:2-149(a). Qualifying expenses are reimbursed to the "parent . . . who is legally responsible for the child's medical expenses." N.J.S.A. 26:2-149(d).

A-0839-20

The Commission's regulations state expenses eligible for reimbursement include those "not covered by any other source, including, but not limited to, other State or Federal agency programs[ or] insurance contracts . . . ." N.J.A.C. 10:155-1.2. N.J.A.C. 10:155-1.14 contains a non-exhaustive list of eligible health services, for which families can seek reimbursement, including medical and psychological services. Even if an applicant is eligible, payment disbursements are limited by the available funds and the Commission has discretion whether to approve an award request. N.J.A.C. 10:155-1.3(b). N.J.A.C. 10:155-1.2 "protects the fiscal integrity of the [f]und, thereby preserving it for the benefit of those truly in need." Lewis, 336 N.J. Super. at 371.

On September 20, 2019, the Commission issued advisory bulletin 19-CICRF-01, regarding "Non-Payment for Out-of-Network Ambulatory Care," stating:

> During a recent review of regulations, the Commission focused on defined terms and [f]und procedures in light of those definitions.
>
> . . . [T]he Commission determined that existing state law and regulation preclude any payment for ambulatory services received from out-of-network providers or facilities, where the use of out-of-network provider or facility by a child with comprehensive health coverage was not inadvertent, urgent, or due to

an emergency. The Commission directed the State Office of the [f]und to process new applications and reconsiderations under this determination, effective for applications received on or after October 1, 2019.

. . . .

The legislation creating the [f]und anticipated families applying to the [f]und for out-of-network care for emergent care or serious illness or injury where the specific expertise and services of an out-of-network facility, provider, or specialist were warranted. The legislation did not contemplate the [f]und as a source of coverage for all voluntary out-of-network services, or as a means to circumvent the provider networks or payment policies of established health coverage programs, including Medicaid.

. . . .

Families that have previously applied to the [f]und for costs incurred as a result of ambulatory care received from out-of-network providers should anticipate that the Commission will determine such expenses ineligible if submitted to the [f]und again.

III.

I.C. argues the bulletin implemented a new, arbitrary policy because it "den[ied] an already-existing claim when, according to the [f]und, parents and providers routinely looked to the [f]und for out-of-network costs and the [f]und willingly paid them." He asserts the Commission's decision lacked proper fact findings because E.C. tried in-network services but only benefitted from treating

with an out-of-network provider. I.C. claims the Commission exclusively relied on the fact he did not file the claims by the deadline in the bulletin, which itself was arbitrary, because the bulletin provided insufficient time to submit his claims. He seeks a remand for a hearing.

At the outset, we note the record establishes: E.C. received non-emergent services; had comprehensive health insurance when she obtained the out-of-network services; and there were in-network providers. Thus, there is no material dispute requiring a hearing, and the Commission properly decided the matter based on the evidence in the record. While we appreciate that E.C. benefitted from the out-of-network services, this does not mandate the fund pay for the services.

We are also unpersuaded the bulletin or the notice it provided for submission of claims were arbitrary, capricious, or unreasonable. "To be reasonable, an agency's choice of action for providing notice does not require adoption of a perfect practice." In re State & Sch. Emps. Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 282 (2018). "[A]gencies have wide latitude in improvising appropriate procedures to effectuate their regulatory jurisdiction." Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 333 (1984). "Deference to an agency decision is particularly appropriate where

interpretation of the [a]gency's own regulation is in issue." R.S. v. Div. of Med. Assistance and Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Hum. Servs., Div. of Med. Assistance and Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)).

The bulletin did not establish a new rule; it maintained that non-emergent out-of-network expenses incurred when a child had comprehensive health insurance would not be reimbursable. Even if I.C. filed for reimbursement in a timely manner, nothing in the Commission's policies and procedures or governing statutes and regulations created an expectation for reimbursement.

## IV.

Like I.C., R.Z. also asserts the Commission's decision lacks fact findings. She argues the Commission's conclusion the psychologist was out-of-network was unsupported by the facts and contrary to the Out-Of-Network Consumer Protection, Transparency, Cost Containment and Accountability Act, N.J.S.A. 26:2SS-1 to -20. R.Z. argues the facts established she urgently needed treatment and her condition met the requirements for reimbursement of the out-of-network urgent care. She asserts the Commission's definition of what constitutes urgent care is vague and should be construed in her favor. She claims the Commission

A-0839-20

violated the Americans with Disabilities Act,[2] failed to make a reasonable accommodation, and denied her equal access to the fund's benefits.

R.Z. also challenges the bulletin's imposition of the filing deadline as procedurally and substantively arbitrary. She argues the bulletin changed the fund's definition of expenses not covered by insurance, claiming it previously meant "that if a service was not covered by a network, one could claim it from the [f]und. Or, from the provider perspective, if they did not join a network, they could expect the [f]und to pay." R.Z. asserts that pursuant to the bulletin, "not covered" now means not from a comparable in-network provider, and providers must join a network to be paid. She claims the Commission previously "created a parallel regime" to serve as a direct source of payment for out-of-network ambulatory services, but the bulletin arbitrarily changed the rules to require the fund to first determine whether an expense could be covered by insurance.

Based on the facts in the record, no further factfinding was necessary because there is no dispute R.Z. had comprehensive health coverage and obtained out-of-network care without first searching in network. The Commission correctly found resorting to an out-of-network provider was

---

[2] 42 U.S.C. § 12101 to -12213.

 A-0839-20

inappropriate as a matter of law. N.J.S.A. 26:2SS-3 states a covered person knowingly, voluntarily, and specifically selects an out-of-network provider when they choose "services of a specific provider, with full knowledge that the provider is out-of-network with respect to the covered person's health benefits plan, under circumstances that indicate that covered person had the opportunity to be serviced by an in-network provider, but instead selected the out-of-network provider."

R.Z. knowingly and voluntarily selected out-of-network care. Furthermore, her condition was not urgent because, as noted in the bulletin, urgent care "[a]s defined in N.J.A.C. 11:24-5.3 . . . include[s] . . . out-of-service-area medical care when medically necessary for urgent or emergency conditions where the member cannot reasonably access in-network services[.]" R.Z. could reasonably obtain in-network services. Furthermore, the Commission determined R.Z. is independent with all activities of daily living and suffered from relatively common conditions. These findings are supported by the record, and we owe them deference.

V.

In both matters, we conclude the Commission did not depart from the legislative policies animating the fund. The Commission's decisions were not

13

arbitrary, capricious, or unreasonable and were supported by the substantial credible evidence in the record. To the extent we have not addressed an argument raised on either appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in A-0839-20 and affirmed in A-1901-20.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14